UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    CRIMINAL CASE NO. 05-50047

            Plaintiff,

v.                                  HONORABLE PAUL V. GADOLA
                                      U.S. DISTRICT JUDGE

MICHAEL DENDY,

            Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant is charged in a two count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count I), and for possession of marijuana and cocaine in violation of 21 U.S.C. § 844(a) (Count II). Before the Court is Defendant's motion to suppress evidence, filed on February 2, 2006. Defendant seeks to suppress the evidence of firearms obtained during a search of his residence's attic, on the grounds that his consent to search was obtained coercively and that a search of the attic was beyond the scope of any consent given.

**I.   Background**

Officer Warden of the Flint Area Narcotics Group received an anonymous telephone call on the afternoon of September 22, 2004 that stated that Defendant had cocaine and marijuana at his residence, that he was a convicted felon, and that there might be warrants out for his arrest. A check of the Law Enforcement Information Network revealed that there were two outstanding warrants for Defendant's arrest on charges of driving with a suspended license. The check also revealed that Defendant was a convicted felon, having been convicted of delivery of marijuana in 2002 and possession of marijuana in 1995 and 1998.

Officer Warden, accompanied by Officer Urban, went to Defendant's residence later that day to execute the outstanding arrest warrants and with the hope of discovering the narcotics mentioned in the anonymous telephone call. When the officers knocked on Defendant's door, a woman answered, and was followed by Defendant. After Defendant admitted his identity, the officers told him that they were there to arrest him on two outstanding warrants. Defendant indicated he would comply with their request to be placed under arrest but, because he was wearing only a tee-shirt at the time, he asked the officers if he could retrieve a pair of pants. It is at this point that Defendant's and the Government's accounts of the facts diverge.

The Government contends that, upon escorting Defendant to a bedroom within the home to retrieve his pants, a digital scale with cocaine residue was in plain sight. According to the Government, Defendant indicated the scale did not work and, in fact, was not his. The officers, after allowing Defendant to put on his pants, then asked for and received written consent from Defendant to search the house. According to the Government, Defendant gave this consent to search while fully clothed and within minutes of the police officers' initial arrival.

Using Defendant's permission to search, the Government claims that the officers found and seized two quantities of marijuana totaling approximately two ounces, two small "corner ties" of cocaine made from the corners of plastic bags, and $2500 in cash from a second bedroom. The officers also seized the scale they observed earlier. Finally, the officers searched Defendant's attic where they found and seized a loaded handgun and a loaded shotgun hidden in the rafters.

Defendant recalls the events differently. He contends the officers, upon entering, did not lead him to a bedroom to put his pants on but instead began a search of the home. This search

2

continued for some twenty minutes while Defendant sat handcuffed in the living room, clad in merely his tee-shirt. Only after this initial search which turned up the marijuana and corner ties of cocaine, and after being informed by the officers that if they had to get a warrant they would "tear the house apart," was he asked to sign a consent to search form. Defendant does not dispute that he did, in fact, sign the form titled "Flint Area Narcotics Group . . . Permission to Search" or that the officers removed his handcuffs before he signed the form. Following his signature, Defendant claims he was allowed to get a pair of pants.

**II.     Legal Standard**

A search of a home conducted pursuant to a suspect's voluntary consent is not unreasonable, and therefore not prohibited by the Fourth Amendment. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). When the government seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was freely and voluntarily given; consent cannot be the result of coercion, force, or threat of force, explicit or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and 'voluntariness is a question of fact to be determined from all the circumstances.' " *Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (citing *Schneckloth*, 412 U.S. at 248-49). "The scope of a search is generally defined by its expressed object." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.*

**III.    Analysis**

Defendant asserts two arguments before this Court.  First, Defendant's written consent to search was not voluntary because it was the result of a "highly coercive atmosphere."  Second, even if the search was consensual, the search of the attic which revealed two loaded weapons was beyond the scope of the consent given.  Each argument will be taken in turn.

### A.  Voluntariness of Consent to Search

Defendant, asserting his version of the facts, relies on *United States v. Chambers*, 395 F.3d 563 (6th Cir. 2005), for the proposition that he was in a "highly coercive atmosphere," *id.* at 570, which rendered his consent involuntary.  In *Chambers*, the Sixth Circuit found the defendant's consent was not voluntary:

> We agree with the District Court that the consent to search forms were executed by Chambers and his wife only a few minutes after the illegal entry by three police officers, after they had conducted a brief preliminary search and found evidence of a methamphetamine lab and after Chambers was no longer free to leave and therefore effectively under arrest. We agree with the District Court as well that these events created a highly coercive atmosphere and that "it would be reasonable for Chambers to think that refusing consent would be a futile gesture amounting to no more than 'closing the barn door after the horse is out.' "

*Id.*

Central to the Sixth Circuit's holding in *Chambers* was the fact that the initial search was illegal.  Because the officers failed to have a search warrant or the requisite exigent circumstances constituting a valid exception to the warrant requirement, the officers were illegally present in the defendant's home.  *Id.* at 569.  It was this illegal initial entry, combined with the fact that the defendant was not free to leave, that made the defendant in *Chambers* believe it would be futile to deny consent.  *Id.* at 569-70.

Based on his factual assertions and his account of what occurred, Defendant argues that,

4

before he consented to the search that revealed the firearms, Defendant's custody, his lack of clothing, the number of officers present (four), and the extended search that uncovered the marijuana and cocaine, all created a highly coercive atmosphere similar to *Chambers*. Defendant contends that these circumstances made him believe that refusing consent would be a futile gesture.

This Court does not find Defendant's account of events or his argument persuasive. Based on the testimony of credible witnesses, the Court finds that the consent to search was freely and voluntarily given, was not the product of coercion or force, and is readily distinguishable from *Chambers*.

Unlike *Chambers,* upon arriving, the officers notified Defendant that they were there because of his outstanding arrest warrants. And although the illegal entry was an essential point in *Chambers*, Defendant makes no claim here that his arrest was illegal. The Government correctly points out that arrest warrants authorize law enforcement personnel to enter a residence when it is believed the suspect is within. *United States v. Wickizer*, 633 F.2d 900, 902 (6th Cir. 1980). Submitting to these lawful arrest warrants, Defendant answered the door wearing only a tee-shirt and asked the officers to allow him to retrieve a pair of pants. The officers, with personal safety and security in mind, accompanied Defendant inside his residence to a bedroom where a scale with cocaine residue was observed in plain view. The Court recognizes that an officer may accompany an arrested individual into his residence and seize contraband discovered in plain view, *Washington v. Chrisman*, 455 U.S. 1, 5-6 (1982), and that this includes situations in which the suspect is accompanied to his bedroom to obtain clothing. *United States v. Butler*, 980 F.2d 619, 621 (10th Cir. 1992) (citing similar cases that had held likewise).

Following this discovery of evidence in plain view, the officers allowed Defendant to don his pants.  They also removed his handcuffs before asking him to consent to a search of the home. There is no dispute that Defendant was not free to leave when he signed this consent to search form. However, even a person in custody and in handcuffs may voluntarily consent to a search.  *See United States v. Crowder*, 62 F.3d 782, 785 (6th Cir. 1995).  Custody, by itself, does not make a consent to search coerced, *United States v. Watson*, 423 U.S. 411, 424 (1976), and a person in custody need not be told that he is free to leave before consenting to a search.  *Robinette*, 519 U.S. at 35.

Knowing that the voluntariness of consent is a question of fact to be determined from all the circumstances,  *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973), and given the credible testimony brought before it, this Court finds that the Government has met its burden of showing that the consent to search was voluntary.  The Court finds the officers were lawfully present in the home while attempting to arrest Defendant on two outstanding warrants and that while accompanying him to retrieve a pair of pants, discovered in plain view, a scale covered in white powder.  The officers then asked for and received, written consent from Defendant to search the home.  It was this search that revealed marijuana and cocaine in another bedroom and two loaded guns within the space of the attic.  Whether the search of the attic was within the scope of the consent must now be considered.

### B.  Scope of the Consensual Search

Defendant argues that, given the circumstances, he did not reasonably believe the search to which he consented included a search of the attic.  Defendant claims that he was only giving

consent to search those areas in the home where officers could locate "possession-like amounts" of drugs. He contends the attic was beyond any such consent. Within the facts of this case, this Court finds no such limitation of the scope to search.

The Government correctly notes that Defendant did not expressly limit the scope of his consent but that Defendant only argues here that it was unreasonable to interpret his consent to include the attic. The Government relies on *United States v. Garrido-Santana*, 360 F.3d 565 (6th Cir. 2004), which stated:

> Before [Officer] Lomax obtained defendant's consent to search the vehicle, he had asked defendant whether he possessed any illegal contraband, such as drugs or stolen goods. In so asking, Lomax thereby had informed defendant that those widely-varied items would be the object of any search. Defendant, per the consent-to-search form that he executed, consented to a search of the vehicle without expressly limiting the scope of that search. It was objectively reasonable for Lomax and Lane to have concluded that this general consent to search the vehicle included consent to search any container within that vehicle that might have held illegal contraband. As Lomax testified, it was well-known that the model vehicle that defendant was driving had an easily accessible gas tank in which to hide narcotics. Moreover, the accessing and search of the gas tank caused no damage to either the vehicle, in general, or the gas tank, in particular. Therefore, it was objectively reasonable for Lomax and Lane to have believed that defendant's general consent to search the vehicle encompassed consent to search the vehicle's gas tank.

*Id.* at 576.

The Sixth Circuit's reasoning is directly applicable here. Also applicable is the Supreme Court's reasoning in *Florida v. Jimeno*:

> In this case, the terms of the search's authorization were simple. Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed Jimeno that he believed Jimeno was carrying narcotics, and that he would be looking for narcotics in the car. We think that it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that

> narcotics are generally carried in some form of a container. "Contraband goods rarely are strewn across the trunk or floor of a car." The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.

*Id.*, 500 U.S. at 251 (citation omitted).

Applying this precedent and given the officers' questions, the title of the consent form Defendant signed, and the officers' interest in the scale covered with white residue, it is clear that the object of the search was illegal drugs. Therefore, it was objectively reasonable for the officers to conclude that Defendant's consent to search permitted the officers to search any location within the home that might have concealed controlled substances, including the attic of Defendant's residence.

For these reasons, the Court finds that the Government has met its burden of showing that Defendant gave a free and voluntary consent to search the home and that the permission to search extended to the attic. Therefore, the Court finds that Defendant's Motion to Suppress should be denied.

**IV.   Conclusion**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's "Motion to Suppress Evidence" [docket entry 16] is **DENIED**.

**SO ORDERED.**


Dated:   May 23, 2006                                             s/Paul V. Gadola
                                                                                   HONORABLE PAUL V. GADOLA
                                                                                   UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   May 24, 2006   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
        Robert W. Haviland; Kevin Rush                                                   , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                          .

                                          s/Ruth A. Brissaud
                                          Ruth A. Brissaud, Case Manager
                                          (810) 341-7845